BROWN, Judge.
The appellants, Lawrence Paultice Williams (“Williams”), and Mark Antonio Thompkins (“Thompkins”), were jointly tried for the murder of William Glen Richardson. Both Williams and Thompkins were convicted of reckless murder, a violation of § 13A-6-2(a)(2), Code of Alabama 1975, and were sentenced to 25 years’ imprisonment.

ISSUES COMMON TO BOTH WILLIAMS AND THOMPKINS

I.
Williams and Thompkins contend that the trial court erred in granting the state’s motion to consolidate their cases, arguing that consolidation was unfairly prejudicial because, they say, their defenses were mutually exclusive and antagonistic.
This case stemmed from an incident that took place in a cul-de-sac surrounded by an apartment complex. As many as 50 persons were gathered at an outdoor party, including Williams and Thompkins. Williams and Thompkins got into an argument that culminated in an exchange of gunfire between them. During the exchange one innocent bystander, William *1137 Glen Richardson, was killed and another bystander was wounded. The state medical examiner determined that Richardson died from multiple gunshot wounds; however, he was unable to ascertain whether Williams’s gun or Thompkins’s gun had fired the fatal shots.
Rule 13.3(c), Ala.R.Crim.P., states:
“(c) Consolidation. If offenses or defendants are charged in separate indictments, informations, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together or that the defendants be joined for the purposes of trial if the offenses or the defendants, as the case may be, could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially were under a single indictment, information, or complaint. However, the court shall not order that the offenses or the defendants, as the case may be, be tried together without first providing the defendant or defendants and the prosecutor an opportunity to be heard.” “A trial court’s decision to consolidate is entitled to deference on appeal and will not be overturned absent a showing of an abuse of discretion. Curry v. State, 601 So.2d 157, 160 (Ala.Cr.App.1992); Gladden v. State, 551 So.2d 1141 (Ala.Cr.App.1989). In order to show that the trial court abused its discretion in consolidating the cases for trial, the appellant must show that consolidation resulted in an unfair trial and that the appellant ‘ “suffered compelling prejudice against which the trial court was unable to afford protection.” ’ Curry, 601 So.2d at 160 (quoting United States v. Webster, 734 F.2d 1048, 1052 (5th Cir.) cert. denied sub nom., Hoskins v. United States, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984)). The test for determining whether a trial court erred in consolidating two or more criminal cases is whether the defenses presented by one defendant were so ‘antagonistic that [the defenses] are “irreconcilable and mutually exclusive” and “the jury, in order to believe one defendant, must necessarily disbelieve the other defendant’s defenses.’” Hill v. State, 481 So.2d 419, 424 (Ala.Cr.App.1985).”
Neither Williams nor Thompkins argues that the trial court’s consolidation violated the provisions of subsections (a)[1] or (b)[2] of Rule 13.3. Rather, the appellants argue that consolidation was unfairly prejudicial because, they say, their defenses were mutually exclusive and antagonistic.
Gibbs v. State, 695 So.2d 649, 652-53 (Ala.Cr.App.1996). See also Jones v. State, 672 So.2d 1366, 1370 (Ala.Cr.App.1995) (wherein this court, quoting from Greathouse v. State, 624 So.2d 202, 205 (Ala.Cr.App.1992), stated that “[t]he burden is on defendants to show that an antagonistic defense would present a conflict ‘so prejudi- *1138 eial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.’ ”). However, even if the appellants show that their defenses were antagonistic, “mutually antagonistic defenses are not prejudicial per se.” Zafiro v. United States, 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); United States v. Talley, 108 F.3d 277, 280 (11th Cir.1997). Moreover, hostility among defendants or the desire of one defendant to exculpate himself by inculpating the other are both insufficient grounds to require that cases be severed. Hill v. State, 481 So.2d 419, 424 (Ala.Cr.App.1985). See also Jones, 672 So.2d at 1370 (the trial court is not necessarily required to sever cases, even if the defendants try to cast blame on each other). Accordingly, the appellants’ grounds, without more, were insufficient to require the court to deny the state’s motion to consolidate.
The appellants failed to show that they suffered any compelling prejudice resulting from the assertion of antagonistic or mutually exclusive defenses. Their convictions for reckless murder negated any claim of self-defense, thus precluding any defense based on each accusing the other of firing the first shot. See Lacy v. State, 629 So.2d 688, 689 (Ala.Cr.App.1993) (a claim of self-defense serves as an admission that one’s conduct is intentional; a person cannot recklessly or negligently defend himself). Moreover, defendants are not entitled to severance “merely because they may have a better chance of acquittal in separate trials.” Zafiro, 506 U.S. at 540, 113 S.Ct. 933. Consequently, we cannot say that the trial court abused its discretion in granting the state’s motion to consolidate the cases for trial.
II.
Williams and Thompkins claim that the trial court erred in denying their motions for a judgment of acquittal with respect to the charges of reckless murder. The indictments read as follows:
“Lawrence Paultice Williams [or Mark Antonio Thompkins] whose name is to the Grand Jury otherwise unknown than as stated, did, under circumstances manifesting extreme indifference to human life, recklessly engage in conduct which created a grave risk of death to other persons, and thereby cause the death of William Glen Richardson, to-wit: by shooting him with a gun, in violation of § 13A-6-2 of the Code of Alabama, against the peace and dignity of the State of Alabama.”
(C. 6-7; 43-44.) The appellants claim that the state did not prove causation. Specifically, they assert that the state failed to prove which of the two fired the fatal shots. Williams stated, in making his motion for a judgment of acquittal:
“Mr. White [Williams’s attorney]: Yes, sir. At this point in time, Judge, on behalf of Lawrence Paultice Williams, I would move for a judgment of acquittal on the grounds that the State has failed to prove a prima facie case and the state has also failed to prove the corpus de-licti.”
(R. 241-42.) The basis for this issue is the following excerpt from the record:
“The Court: Mr. DA’s, I got a real problem with Count I [intentional murder] in these indictments.
“Mr. Anderson [prosecutor]: Your Honor, the first count is the intentional act; is that correct?
“The Court: That’s right.
“Mr. Anderson: There is plenty of evidence before the Court that both of these individuals — the intent that the State has, first of all, they were carrying these weapons. Second of all, Your Honor, we’re talking about a .45-caliber weapon. As to Mr. Mark Thompkins, he pulls a .45-caliber weapon out, Mark Thompkins does, and fires it in the direction of Mr. Paultice, Lawrence—
“The Court: I’m not talking about the first part of the indictment. I’m talking about the second part.
*1139 “Mr. Anderson: The second part of the indictment?
“The Court: Right.
“Mr. York [prosecutor]: Up—
“Mr. Anderson: The depraved heart, Your Honor?
“The Court: No, the second part of Count I, that that Defendant did, in fact, cause the death of William Glen Richardson by shooting him with a gun. Now, what evidence do you have to that as to each Defendant?
“Mr. Anderson: As to each defendant, Your Honor, the State has put on several witnesses that have testified that either Mr. Paultice Williams or Mr. Mark Thompkins fired those weapons -with—
“The Court: No question about that.
“Mr. Anderson: Okay. And that—
“The Court: With the intent of shooting one another. I’ll buy that.
“Mr. Anderson: We have evidence that only two people fired weapons that day.
“The Court: All right. Which one killed the victim?
“Mr. York: I think that’s—
“The Court: No, that ain’t a jury question. It’s °%o and that ain’t enough.
[[Image here]]
“The Court: Well, one of the elements of Count I is that that Defendant did, in fact, cause the death of the—
“Mr. Anderson: Judge, what about the fact from forensics evidence we have gunshot wounds from three different directions?
“The Court: No question he was killed with a gunshot.
“Mr. York: But from—
“Mr. Anderson: Three different directions. The evidence before the jury right now we have one that goes from forward to backwards. We have one that goes right to left, backwards to forward and we have one that goes from left to right backwards to forward.
“The Court: All right. That’s—
“Mr. Anderson: That’s some additional evidence for the jury to decide as to who fired what and who was hit where or how he was hit and by whom.
“The Court: All right. Who did it?
“Mr. York: Well, if you’ve got Thomp-kins on one side and Paultice Williams on the other and he’s hit from three different directions, they can infer that it was either and/or both of them.
“Mr. Anderson: And there’s evidence before the jury that they can decide that as well, Your Honor.
“The Court: No, Count I in each case is out. Count II [reckless murder] is in.
“Mr. York: Are you going to let them argue self-defense?
“The Court: Sure.
“Mr. Jordan [Thompkins’s attorney]: Judge, just for the record, I would submit that the same logic that applies to Count I should apply to Count II just for the purposes of appeal and legal arguments later.
“The Court: Certainly. All right. Your motions are granted as to Count I in each indictment and denied as to Count II in each indictment. Let’s take about a 10-minute break.”
(R. 245-49.)
It is on this exchange that Williams bases his claim that the state was unable to establish who actually caused the death of Richardson.
However, § 13A-2-5, Code of Alabama 1975, addresses the criminal liability that attaches when an individual’s conduct causes injurious or harmful results. This section states, in pertinent part:
“(b) A person is nevertheless criminally liable for causing a result if the only difference between what actually occurred and what he intended, contemplated or risked is that:
“(1) A different person or property was injured, harmed or affected.”
*1140 From the evidence, it is clear that the appellants engaged in a gun battle in a crowd of people. As a direct result, William Glen Richardson, an innocent bystander, was shot and killed. There was no “ ‘unforeseen “supervening, intervening cause sufficient to break the chain of causation.” ’ ” Weidler v. State, 624 So.2d 1090, 1093 (Ala.Cr.App.1993), quoting Pearson v. State, 601 So.2d 1119, 1126 (Ala.Cr.App.1992).
Based on the foregoing, the issue of causation was sufficiently proved and the trial court correctly denied Williams’s motion for a judgment of acquittal on that ground.
Thompkins also raises the same causation issue — that the forensic evidence failed to show which gun fired the fatal shots. At trial, however, Thompkins argued his motion challenging the sufficiency of the evidence on the following grounds:
“Specifically, as to Count II [reckless murder], it’s a depraved heart theory, the evidence so far at this time is that the only witness to testify was the first — was the witness that was in jail who testified that my client fired his weapon at Paultice Williams. There’s been no showing of any intent to shoot Glen Richardson by any witness. The only evidence goes to my client having an argument with Paultice Williams, my client firing in the direction of Paultice Williams. That does not fit under the scheme of depraved heart and [we] would move to dismiss that.”
(R. 244.) Thompkins raises a different ground on appeal than he raised at trial; however, he is bound by the grounds he raised at trial. Washington v. State, 555 So.2d 347, 348 (Ala.Cr.App.1989). Therefore, there is nothing for this court to review.
That being said, in reviewing the record in this case, it is clear to this court that the evidence did not support the appellants’ convictions for reckless murder.
Reckless murder is defined in § 13A-6-2(a)(2), Code of Alabama 1975, as follows: “(a) A person commits the crime of murder if:
[[Image here]]
“(2) Under circumstances manifesting an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person.”
The evidence tended to show that, following a brief confrontation and in the midst of as many as 50 people, Williams and Thompkins drew a 9mm pistol and a .45-caliber pistol, respectively, and engaged in a gun battle. At some point during the shooting, William Glen Richardson, a bystander, was hit three times and killed. Another bystander was wounded. The forensic evidence showed that the bullets that caused Mr. Richardson’s wounds entered his body from different directions. One bullet entered the left shoulder where it joins the neck, hit the carotid artery, and then exited through the left side of Richardson’s jaw. This bullet was traveling from left to right. Another bullet entered the right side of the abdomen/chest area, lacerated Richardson’s liver, intestines, and stomach and then exited through the left side of the abdomen. This bullet was traveling right to left and downward. The third bullet entered the front of Richardson’s left leg below the knee and exited through the calf muscle, traveling in a downward direction. The medical examiner stated that all the wounds were of a size consistent with the bullets fired by both weapons; therefore, he could not determine whether one or both weapons inflicted any or all of the wounds. However, with the evidence indicating wound entry points on both sides of Richardson’s body, the jury could reasonably infer that Richardson was hit by at least one shot from both Williams’s gun and Thompkins’s gun. The official cause of death was “multiple gunshot wounds.”
*1141 While engaging in a gunfight in a residential area with dozens of people present undoubtedly constitutes reckless conduct, under the facts of this case, that conduct does not conform to the statutory definition of reckless murder contained in § 18A-6-2(a)(2), Code of Alabama 1975. The evidence clearly showed that Williams and Thompkins were specifically shooting at each other and that they were not just shooting into the crowd.
“ ‘[§ 13A-6-2(a)(2) J requires the prosecution to prove conduct that manifests an extreme indifference to human life and not to the life of any particular person. The purpose of § 13A-6-2(a)(2) is to embrace those homicides caused by such acts as shooting a firearm into a crowd, throwing a timber from a roof onto a crowded street, or driving an automobile in a grossly wanton manner. See Northington v. State, 413 So.2d 1169 (Ala.Cr.App.1981), writ quashed, 413 So.2d 1172 (Ala.1982).... Under the concept of reckless murder, the actor perceives a substantial and unjustified risk, but consciously disregards the risk of death.’ ”
D.D.A. v. State, 650 So.2d 571, 578 (Ala.Cr.App.1994) (citation omitted) (emphasis added). See also McLaughlin v. State, 586 So.2d 267, 270 (Ala.Cr.App.1991) (the element of “extreme indifference to human life” by definition does not apply to the life of the victim, but to human life in general); Gholston v. State, 494 So.2d 876, 883 (Ala.Cr.App.1986) (to be reckless, a crime must be directed toward the general public, not toward a particular person); King v. State, 505 So.2d 403, 405 (Ala.Cr.App.1987) (reckless murder “differs from intentional murder in that it results not from a specific, conscious intent to cause the death of any particular person, but from an indifference to or disregard of the risks attending appellant’s conduct”); Baker v. State, 472 So.2d 700, 703 (Ala.Cr.App.1985) (reckless murder “is intended to embrace those cases where a person has no deliberate intent to kill or injure any particular individual”); Northington v. State, 413 So.2d 1169, 1171 (Ala.Cr.App.1981) (where the defendant’s acts were specifically directed at a particular victim and no one else, she could not be convicted of reckless murder under § 13A-6-2(a)(2), Code of Alabama 1975).
The appellants were clearly attempting to shoot each other. Based on the caselaw cited above, the evidence in the present case simply does not support a conviction for reckless murder as to either Williams or Thompkins.
There was, however, sufficient evidence to support a conviction for the lesser-included offense of reckless manslaughter. See Brooks v. State, 629 So.2d 717, 718 (Ala.Cr.App.1993) (reckless manslaughter includes those killings in which the act resulting in the victim’s death was directed to one or more particular persons). Reckless manslaughter is defined in § 13A-6-3(a)(l), as follows: “A person commits the crime of manslaughter if ... he recklessly causes the death of another person.” Section 13A-2-2(3), defining “recklessly,” provides:
“A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.”
After the trial court granted the appellants’ motions for a judgment of acquittal on the intentional murder charge, the remaining offenses were reckless murder and the lesser-included offense of reckless manslaughter. Of these two offenses, the evidence presented at trial supported only manslaughter.
We note that the jury found Williams and Thompkins guilty of the higher offense; consequently, it found the *1142 existence of every element of the'lesser-included offense. Edwards v. State, 452 So.2d 506 (Ala.Cr.App.1983), aff'd, 452 So.2d 508 (Ala.1984). Equally important; the trial court instructed the jury on the lesser-included offense of reckless manslaughter; therefore, entering a judgment of conviction for reckless manslaughter and sentencing the appellants accordingly will not violate the constitutional protection against double jeopardy. Id. Accord Ex parte Walls, 711 So.2d 490 (Ala.1997).
Because both Williams and Thompkins were precluded from relief in the instant appeal regarding their reckless murder convictions, the proper vehicle to address this issue is through a post-conviction petition pursuant to Rule 82, Ala.R.Crim.P.

ISSUES RAISED BY THOMPKINS

III.
Thompkins argues that the trial court’s consolidation of his case with Williams’s case violated his rights to due process and equal protection under the law. In support of this argument, he maintains that the consolidation (1) relieved the state of its burden of proving him guilty beyond a reasonable doubt because, he says, the defendants tried to inculpate each other, causing the jury not to believe either defendant and (2) shifted the burden of proof by forcing him to prove that Williams fired the fatal shots. These arguments are no more than bare allegations and conclusory statements with no factual support.
The record shows that during the trial, the court instructed the jury to consider the cases separately and/or to arrive at separate verdicts for each defendant. (R. 20-24; 466; 476-78.) It further instructed the jury on the presumption of innocence, the state’s burden of proof (R. 37-38; 470-75), and on reasonable doubt. (R. 470-71.)
The appellant’s argument is without merit.
IV.
Thompkins claims that the trial court erred in permitting the state to amend his indictment to add the reckless murder charge. The record reveals that in its initial instructions to the jury venire the trial court read the indictments. Each defendant was charged with two counts: intentional murder (Count I), and reckless murder (Count II). When the court read Count II of Thompkins’s indictment, the document mistakenly listed Lawrence Paultice Williams, Thompkins’s co-defendant, as the defendant. (C. 43; R. 23-24.) Later, on the state’s motion, the trial court amended the indictment to reflect Thomp-kins’s name. Although Thompkins’s attorney objected, he admitted that he did not notice the error before the trial and that he was fully prepared to defend both counts of the indictment. (R. 78-81.)
Rule 13.5(a), Ala.R.Crim.P., states that a charge may be amended “without the defendant’s consent, at any time before verdict or finding, if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced.” See also Sanders v. City of Birmingham, 669 So.2d 236, 238 (Ala.Cr.App.1995) (the defendant’s substantial rights were not prejudiced when the circuit court corrected a scrivener’s error to insert the defendant’s name in place of another name that appeared in the complaint; such a correction merely amended the complaint to conform to the UTTC upon which the defendant had previously been tried). In the instant case, it is clear that no new or additional offense was charged by changing the name, nor were Thompkins’s substantial rights prejudiced. This issue is without merit.
V.
Thompkins maintains that the trial court erred when it instructed the jury as to the dismissal of the intentional murder count and the reason therefor because, he says, such an instruction gave undue *1143 prominence to the remaining count of reckless murder.
We have reviewed the trial court’s jury instructions in their entirety, (R. 463-80), and we cannot say that the judge’s reminder to the jury that it was not to consider the intentional murder count unduly emphasized the remaining count of reckless murder. See Self v. State, 620 So.2d 110, 114 (Ala.Cr.App.1992) (even if a portion of the jury instruction is erroneous or misleading, the entire instruction must be construed together to determine if there is reversible error). The trial court did not err.

ISSUE RAISED BY WILLIAMS

VI.
Williams contends that the trial court erroneously applied the firearm enhancement provision set out in § 13A-5-6(a)(4), Code of Alabama 1975. Specifically, he claims that that provision applies to only those offenses in which intent is an element and that it is, therefore, inapplicable in this case because a conviction for reckless murder requires only reckless conduct. The record is silent as to whether the trial court applied the firearm enhancement to Williams’s sentence. Even if it did so, it was not error.
Section 13A-5-6 provides, in pertinent part:
“(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:
[[Image here]]
“(5) For a Class B or C felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years.”
Williams cites Ex parte McCree, 554 So.2d 336 (Ala.1988), to support his contention that the firearm sentence enhancement set out in § 13A-5-6(a)(5) can never apply to a felony as to which intentional conduct is not an element. In McCree, the defendant was convicted of reckless manslaughter when his gun, which he did not realize was loaded, accidently discharged and killed the victim while McCree was demonstrating its features. The trial court applied the firearm enhancement in sentencing McCree. This court affirmed. The Alabama Supreme Court reversed the judgment of this court because it found his conduct did not reach the level of culpability required to invoke enhancement. 554 So.2d at 341. We note that at the conclusion of its opinion in McCree, the Alabama Supreme Court carefully, and with emphasis, stated that its holding was limited to the specific facts of the case and left open the possibility that, under other facts, the firearm sentence enhancement might apply to a reckless manslaughter conviction. McCree, 554 So.2d at 341.
In Woods v. State, 602 So.2d 1210 (Ala.Cr.App.1992), the defendant was convicted of reckless murder after firing a pistol into a crowd of students, killing one of them. In sentencing the defendant, the trial court applied the firearm enhancement provision. On appeal, Woods claimed that the enhancement provision was not applicable because his conduct was reckless, not intentional. This court, quoting McCree, stated:
“‘[T]he use of the deadly weapon to commit the underlying felony is the classic situation intended by the legislature to invoke the enhanced penalty.’ McCree, 554 So.2d at 341.”
Woods v. State, 602 So.2d at 1211. (Emphasis in McCree.) In affirming the trial court’s sentence, we stated that by convicting Woods of reckless murder, the jury found that he knew that he was firing into a group of students and that he knew that a bullet would probably hit and kill one or more students. “That determination satisfied the ‘intent’ requirement and authorized the sentence enhancement provision of § 13A-5-6(a)(4).” Id. at 1212.
In Woods, this court accepted the supreme court’s invitation in McCree to de *1144 termine, on a case-by-case basis, whether the firearm enhancement could be applied to a felony, an element of which was recklessness and not intentional conduct. In his brief, Williams maintains that Woods was wrongly decided and he requests that we overrule it; we decline to do so.
Our holding in Woods was supported by Mays v. State, 607 So.2d 347 (Ala.Cr.App.1992), in which this court distinguished McCree. In Mays, we held that the firearm sentence enhancement provision did apply, under the facts of the case, to a reckless manslaughter conviction. In Mays, the defendant, while talking to the victim, pulled out a gun, loaded it, and aimed it at her. The gun discharged and killed the victim. The defendant claimed that the gun accidentally discharged. Although a firearms expert testified at trial that it would be very difficult for the particular weapon involved to discharge accidentally, the defendant was convicted of reckless manslaughter. In sentencing the defendant, the trial court applied § 13A-5-6(a)(5). On appeal, Mays claimed that, under McCree, his sentence was incorrectly enhanced. In affirming the sentence, this court stated:
“This case exemplifies the reason the Alabama Supreme Court limited McCree to its facts. McCree recognizes that there may be other situations where the enhancement provision should be used in reckless manslaughter cases. We hold that in this case there did exist the intent envisioned by the legislature to apply the enhancement provision for the intentional use of a firearm.”
Mays, 607 So.2d at 349.
In the present case, the evidence showed that Williams intentionally retrieved a gun from inside his car, loaded it, and fired it at Thompkins. Thompkins intentionally retrieved his gun from his clothing and fired it at Williams. With the crowd of people around, it can be fairly and reasonably inferred that both appellants were “aware of and consciously disregarded ‘a substantial and unjustifiable risk’ that death [would] occur” as a result of their gun battle at that time and in that place. Id. As in Mays and Woods, the recklessness shown in the present case by both Williams and Thompkins went far beyond that found in McCree, because the firing of the guns by both Williams and Thompkins was intentional. Consequently, we hold that the firearm sentence enhancement provision of § 13A-5-6(a)(5), Code of Alabama 1975, is applicable to the specific facts of this case for sentencing purposes, even where recklessness, and not intentional conduct, is an element.
Based on the foregoing, we affirm the judgment of the trial court.
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, and BASCHAB, JJ., concur.

. Rule 13.3(a), Ala.R.Crim.P., states:
"(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(1) Are of the same or similar character; or
“(2) Are based on the same conduct or are otherwise connected in their commission; or
“(3) Are alleged to have been part of a common scheme or plan.
"Two or more offenses shall not be joined in the same count. Felonies and misdemeanors may be joined in separate counts of the same indictment or information."

. Rule 13.3(b), Ala.R.Crim.P., provides:
“(b) Defendants. Two or more defendants may be charged in the same indictment, information, or complaint:
"(1) If they are alleged to have participated in the same act or transaction; or
"(2) When the several offenses are part of a common conspiracy, scheme, or plan; or
"(3) When the several offenses are otherwise so closely connected that it would be difficult to separate proof of one from proof of the other.
“Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.”