We granted Lawrence Paultic Williams's petition for a writ of certiorari to determine whether the Court of Criminal Appeals, in an unpublished memorandum affirming the denial of Williams's Rule 32, Ala.R.Crim.P., petition, violated "the law of the case" established by the opinion that court had already published in previously affirming Williams's conviction on direct appeal, Williams v. State, 736 So.2d 1134
(Ala.Crim.App. 1998), cert. denied, 736 So.2d 1134 (Ala. 1999). We conclude that the crucial statement of law in the published opinion on direct appeal is not a holding but is, rather, obiter dictum and therefore was not and is not the law of the case. We conclude moreover, that the dictum is mistaken. Therefore, we affirm the Court of Criminal Appeals in its denial of Williams's Rule 32 petition, and, to prevent confusion in future cases, we disapprove the mistaken dictum in the opinion on direct appeal.
Williams was convicted of reckless murder as defined by §13A-6-2(a)(2), Ala. Code 1975, as was his codefendant Mark Antonio Thompkins. That subsection reads:
"(a) A person commits the crime of murder if:
". . . .
 "(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person."
The dictum addresses whether the evidence was sufficient to support a finding of the mens rea essential to reckless murder. Several passages from the opinion of the Court of Criminal Appeals on direct appeal state the operative facts:
 "This case stemmed from an incident that took place in a cul-de-sac surrounded by an apartment complex. As many as 50 persons were gathered at an outdoor party, including Williams and Thompkins. Williams and Thompkins got into an argument that culminated in an exchange of gunfire between them. During the exchange one innocent bystander, William Glen Richardson, was killed and another bystander was wounded. The state medical examiner *Page 1030 
determined that Richardson died from multiple gunshot wounds; however, he was unable to ascertain whether Williams's gun or Thompkins's gun had fired the fatal shots."
Williams, 736 So.2d at 1136-37.
 "In the present case, the evidence showed that Williams intentionally retrieved a gun from inside his car, loaded it, and fired it at Thompkins. Thompkins intentionally retrieved his gun from his clothing and fired at Williams."
Williams, 736 So.2d at 1144.
 "The evidence tended to show that, following a brief confrontation and in the midst of as many as 50 people, Williams and Thompkins drew a 9mm pistol and a .45-caliber pistol, respectively, and engaged in a gun battle. At some point during the shooting, William Glen Richardson, a bystander, was hit three times and killed. Another bystander was wounded. The forensic evidence showed that the bullets that caused Mr. Richardson's wounds entered his body from different directions. One bullet entered the left shoulder where it joins the neck, hit the carotid artery, and then exited through the left side of Richardson's jaw. This bullet was traveling from left to right. Another bullet entered the right side of the abdomen/chest area, lacerated Richardson's liver, intestines, and stomach and then exited through the left side of the abdomen. This bullet was traveling right to left and downward. The third bullet entered the front of Richardson's left leg below the knee and exited through the calf muscle, traveling in a downward direction. The medical examiner stated that all the wounds were of a size consistent with the bullets fired by both weapons; therefore, he could not determine whether one or both weapons inflicted any or all of the wounds. However, with the evidence indicating wound entry points on both sides of Richardson's body, the jury could reasonably infer that Richardson was hit by at least one shot from both Williams's gun and Thompkins's gun. The official cause of death was `multiple gunshot wounds.'"
Williams, 736 So.2d at 1140.
The pertinent holding in the opinion on direct appeal is that the evidence was sufficient to support a finding on the essential element ofcausation — that Williams's conduct caused the death of the victim. This holding, among others, is the basis for the judgment by the Court of Criminal Appeals affirming Williams's conviction for reckless murder.
The opinion expressly recognizes that the issue of whether the evidence was sufficient to support a finding of the mens rea essential to reckless murder, was not before the Court of Criminal Appeals in the direct appeal. Nonetheless, the opinion states:
 "While engaging in a gunfight in a residential area with dozens of people present undoubtedly constitutes reckless conduct, under the facts of this case, that conduct does not conform to the statutory definition of reckless murder contained in § 13A-6-2(a)(2), Code of Alabama 1975. The evidence clearly showed that Williams and Thompkins were specifically shooting at each other and that they were not just shooting into the crowd.
". . . .
 "The appellants were clearly attempting to shoot each other. Based on the caselaw cited above, the evidence in the present case simply does not support a conviction for reckless murder as to either Williams or Thompkins.
". . . .
 "Because both Williams and Thompkins were precluded from relief in the *Page 1031 
instant appeal regarding their reckless murder convictions, the proper vehicle to address this issue is through a post-conviction petition pursuant to Rule 32, Ala.R.Crim.P."
Williams, 736 So.2d at 1141-42. (Emphasis added.) While we, the Supreme Court, denied the respective petitions for a writ of certiorari filed not only by Williams but also by the State, our denials did not constitute any endorsement of any feature of the opinion by the Court of Criminal Appeals. See Ex parte Siebert, 778 So.2d 857, 857 (Ala. 2000) (Johnstone, J., concurring specially); Ex parte Terry, 540 So.2d 785 (Ala. 1989);Banks v. State, 358 So.2d 480 (Ala. 1978); and Hurst v. State,293 Ala. 548, 307 So.2d 73 (1975).
After Williams's conviction was affirmed on direct appeal, he pursued the suggestion in that opinion and filed a Rule 32 petition, the matter now before us, asserting that the evidence was insufficient to support a finding of the mens rea essential to reckless murder and that his appellate counsel was ineffective for failing to raise this aspect of insufficiency of the evidence on direct appeal. The trial court held that the statements by the Court of Criminal Appeals cited by Williams were not the law of the case but were only dictum which conflicted with the holding of Ex parte Simmons, 649 So.2d 1282, 1285-86 (Ala. 1994). Therefore, the trial court held that the evidence was not insufficient to support a finding of the requisite mens rea and that Williams's appellate counsel was not ineffective for refraining from challenging this aspect of the sufficiency of the evidence on direct appeal. Upon these holdings, the trial court denied Williams's Rule 32 petition.
Likewise relying on Simmons, the Court of Criminal Appeals affirmed the denial of Williams's Rule 32 petition. He has petitioned us for certiorari review. While we have granted his petition, we now affirm because the trial court was right in denying the Rule 32 petition and the Court of Criminal Appeals was right in affirming the denial.
Because obiter dictum is, by definition, not essential to the judgment of the court which states the dictum, it is not the law of the case established by that judgment. Gray v. Reynolds, 553 So.2d 79, 81 (Ala. 1989). Therefore, in addressing Williams's Rule 32 petition, neither the trial court nor the Court of Criminal Appeals was bound by the dictum in the opinion by the Court of Criminal Appeals on direct appeal. Rather, those courts were justified in relying on the holding of this Court inSimmons:
 "Simmons contends that the State presented insufficient evidence to support a conviction of reckless murder. Specifically, he contends that the evidence showed that the shots fired were fired with the intention to kill a specific individual only and were not directed at human life in general. . . .
 "`Reckless murder' or, as it is sometimes called, `universal malice murder' or `depraved heart murder,' requires the prosecution to prove conduct that manifests an `extreme indifference to human life,' any human life. As noted above, Simmons contends that this section is not applicable to the present situation because, he says, the intended victim was a particular person. We disagree.
 "The fact that the families of Simmons and Peterson had been involved in an altercation the night before the child was killed is not in dispute. There was testimony that Peterson had fired shots at Simmons and at some of Simmons's family before the exchange of gunfire in which the child was killed. However, the evidence was that Simmons, as well as several others, was shooting firearms *Page 1032 
indiscriminately in the general direction of the car in which the child was riding. This spraying of bullets occurred on a public street in a residential neighborhood in the middle of the day. That the one who fired the fatal shot may have intended to kill a particular person does not take this fact situation out of the scope or concept of reckless murder. Spraying gunfire openly on a public street is reckless conduct that creates a grave risk of death and, in fact, in this case it did cause the death of an innocent person, the child.
 "As noted in the Commentary to § 13A-6-2 (under the subheading `Transferred Intent'):
 "`Where the actor intentionally or knowingly does an act that is highly likely to cause death to another person, and as a natural and direct result another person is killed, though not the person subjectively intended to be killed or seriously injured (e.g., arson of public building, blowing up commercial airplane, shooting gun indiscriminately, etc.), the actor is guilty of murder under either § 13A-6-2(a)(1) because he intended "to cause the death of another person," or § 13A-6-2(a)(2) for recklessly engaging in conduct which creates a grave risk of death and "under circumstances manifesting extreme indifference to human life."'
 "Given the specific facts of this case, it does not matter whether Simmons intended to kill Peterson or some other particular person. Rather, the conduct of the parties involved in the shooting created a grave risk of death and was, under the circumstances, a manifestation of extreme indifference to human life."
Simmons, 649 So.2d at 1285-86. This law, rather than the conflicting dictum in the Williams opinion, governs the corresponding issue in Williams's Rule 32 petition now before us.
The evidence of Williams's mens rea in the case now before us is analogous to and as strong as the evidence of mens rea Simmons held to be sufficient. Therefore the proof against Williams was sufficient.
A lawyer is not ineffective for declining to assert an invalid contention. Neelley v. State, 642 So.2d 494, 509 (Ala.Crim.App. 1993);Hubbard v. State, 584 So.2d 895, 914 (Ala.Crim.App. 1991); and Palmes v.Wainwright, 725 F.2d 1511, 1523 (11th Cir. 1984). Therefore, Williams's appellate counsel was not ineffective for declining to challenge the sufficiency of the evidence of Williams's mens rea.
AFFIRMED.
MOORE, C.J., and HOUSTON, LYONS, and WOODALL, JJ., concur.