MURDOCK, Justice
(dissenting).
I disagree with this Court’s conclusion that it was permissible for the trial court to consider a potential bad-faith and/or negligent-failure-to-settle claim against the defendants’ liability-insurance carrier in assessing whether the punitive-damages award was beyond the defendants’ ability to pay.
In considering a potential claim as part of the defendants’ assets, the trial court relied, and the main opinion relies, upon Mutual Assurance, Inc. v. Madden, 627 So.2d 865 (Ala.1993), a case in which this Court stated that “it is within the trial court’s discretion to ascribe a reasonable present value to [the defendant’s potential claims], and to consider such an asset on the remittitur issue.” Id. at 866. The main opinion fails to note, however, that this statement in Madden was dictum.
The appellants in Madden, the doctor in a medical-malpractice action and his liability-insurance carrier, challenged the trial court’s authority to order the insurance carrier to “show cause” as to why the court should not consider, in determining the financial impact of the punitive-damages award, a potential bad-faith claim the doctor might have had against his liability-insurance carrier. This Court concluded that the trial court did not have the authority to order the liability-insurance carrier, a nonparty to the malpractice action, “to assume a burden of proof on the remit-titur question.” 627 So.2d at 866. The Madden Court held that this conclusion was “dispositive of these appeals.” Id.
Despite this holding, and simply because “the parties requested] that we also address” the issue, 627 So.2d at 866, the Court went further and addressed whether, in a remittitur proceeding, it was proper for a trial court to consider a physician’s potential for recovering from his liability insurer the amount of the judgment against him that exceeds the amount of his insurance coverage. Id. Thus, the conclusion from Madden relied upon by the main opinion is dictum and, therefore, it is not binding upon this Court in the present case. See Ex parte Williams, 838 So.2d 1028, 1031 (Ala.2002) (observing that “obi-ter dictum is, by definition, not essential to the judgment of the court which states the dictum[; therefore,] it is not the law of the case established by that judgment”).
In asking this Court to overrule the dictum in Madden, the defendants do not ask us to dispense with a persuasive holding of this Court. Indeed, in the only other case in which this Court has addressed this issue — Tillis Trucking Co. v. Moses, 748 So.2d 874 (Ala.1999)—the Court distinguished Madden on the ground that the potential bad-faith claim in Tillis Trucking Co. was “too speculative” *512 to affect remittitur. 748 So.2d at 887. I have been unable to locate a court in any other jurisdiction — state or federal — that has decided as the Madden Court did on this issue since Madden was decided.
Furthermore, the Madden Court’s statement that a trial court could consider a potential claim as an asset in assessing a defendant’s financial condition in relation to the size of a punitive-damages award was strongly criticized by two persuasive special writings in that case. Justice Houston wrote:
“If the trial court considers any more than the face amount of the defendant’s liability policy and the present assets of the defendant in the Hammond [v. City of Gadsden, 493 So.2d 1374 (Ala.1986),] hearing, it will deprive the defendant of his constitutional rights. The defendant’s constitutional right to fairness in punishment cannot depend upon what may happen in another court on another day.”
627 So.2d at 867 (Houston, J., concurring in the result) (emphasis added).
Similarly, Justice Maddox explained:
“[T]he trial court cannot determine the value of a potential bad faith claim for purposes of the Hammond-Green Oil Co. hearing without engaging in rank speculation as to the value of such an asset and thereby depriving Dr. Evans of his constitutional right to a post-verdict assessment of the jury’s award of punitive damages.”
627 So.2d at 867 (Maddox, J., concurring in part and dissenting in part) (emphasis added).
I agree with the above-quoted assessments of the Madden Court’s dictum. Without conducting a separate trial on the physician’s third-party claim, there is simply no way to know how much worth, if any, should be placed on a potential bad-faith claim by the defendants against their liability-insurance carrier. As any plaintiffs lawyer can attest, the road from the accrual of a potential cause of action to the entry of a judgment and, eventually, collection of that judgment, can be a long one full of pitfalls and potential “exits.” A great many obstacles — at least some of which would not become apparent until litigation actually commences — could prevent any recovery on such a claim, or at least prevent the amount of the recovery speculated to be “in the offing” by a trial court in some prior, collateral proceeding. Including a potential claim as part of a defendant’s assets requires a trial court to transform itself from a fact-finder into something more akin to a fortune teller.
Aside from the speculative nature of such a claim in itself, there is a problem of timing. A punitive-damages award, like the award in any final judgment, is due as soon as the judgment becomes final. If the defendant cannot or does not voluntarily pay the award from its liquid assets, the plaintiff may seek immediately to execute upon the defendant’s assets, both liquid and illiquid. On the other hand, any judgment to be obtained by the defendant upon a potential claim against its liability-insurance carrier would come a long time— perhaps years — after the current judgment is enforceable. Thus is raised the very real specter that a judgment intended by the law to “sting” a physician or other defendant will instead have the effect of financially destroying that physician or defendant. See Ex parte Vulcan Materials Co., 992 So.2d 1252, 1260 (Ala.2008) (noting that “[sjociety’s goal [in permitting punitive damages] is to deter — not to destroy— the wrongdoer” and that “[t]o effectuate that purpose, a punitive-damages award ‘ “ought to sting in order to deter.” ’ ” (quoting Green Oil Co. v. Hornsby, 539 So.2d 218, 222 (Ala.1989), quoting in turn Ridout’s-Brown Serv., Inc. v. Holloway, *513 397 So.2d 125, 127 (Ala.1981) (Jones, J., concurring specially))).
On an even more fundamental plane, I offer two additional observations. First, any potential bad-faith claim the defendants may have against their liability insurer did not even exist until the judgment in this case was made. See Evans v. Mutual Assurance, Inc., 727 So.2d 66, 67 (Ala.1999) (stating that “a cause of action arising out of a failure to settle a third-party claim made against the insured does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits”)- As a corollary, the consideration of such a potential recovery creates a circularity of reasoning in which the court can, for all practical purposes, consider the availability of a third party to pay damages in whatever amount might be set. As one court has put it, because the potential claim “was not in existence before the jury entered its verdict, it could not be considered as part of [the defendants’] net worth in determining the amount of the award. Otherwise, the size of the punitive award could be unlimited-” Wransky v. Dalfo, 801 So.2d 239, 242 (Fla.Dist.Ct.App.2001) (emphasis omitted). As another court has explained, a potential claim against an insurer should not be considered in establishing a punitive-damages award because such an asset would make the insurer “responsible to pay damages in an amount that would never have been considered by the parties were the insurance company not the responsible entity.” Battista v. Western World Ins. Co., 227 N.J.Super. 135, 151, 545 A.2d 841, 849 (N.J.Super.Law Div.1988), rev’d in part on other grounds sub nom., Battista v. Olson, 250 N.J.Super. 330, 594 A.2d 260 (N.J.Super.App.Div.1991).
For all the foregoing reasons, trial courts should not be asked to divine the likelihood of a tortfeasor obtaining a judgment against a third party and the chances of the tortfeasor actually collecting on that judgment as part of the already complex and challenging task of assessing whether a punitive-damages award is appropriate in amount. I dissent on the basis of the inappropriateness of the consideration of a hypothetical third-party recovery in setting the proper amount of a punitive-damages award.[20]

. The main opinion applies a de novo standard of review to the challenge to the punitive-damages award made under state law, see Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), Green Oil, supra, as well to the challenge made based upon the United States Supreme Court's decision in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). 108 So.3d at 504. I struggle somewhat with the notion that some deference is not owed a trial judge who has sat through the trial along with the jury and is being asked to use his or her best judgment in determining the level of punitive damages appropriate in the case before him or her. Before Acceptance Insurance Co. v. Brown, 832 So.2d 1 (Ala.2001) and Horton Homes, Inc. v. Brooks, 832 So.2d 44, 57 (Ala.2001), our cases clearly recognized that deference was owed to a trial court’s decision as to remittitur and that the appellate standard of review was an abuse-of-discretion standard. See, e.g., General Motors Corp. v. Edwards, 482 So.2d 1176, 1198 (Ala.1985) (overruled on other grounds by Schwartz v. Volvo North America Corp., 554 So.2d 927 (Ala.1989) (stating that "this Court has generally followed the principle that a trial court is accorded a large measure of discretion in determining whether to grant a remittitur” and that "[w]e have also generally held that when a trial court exercises its discretion to order a remittitur, its decision is presumed correct and will not be reversed on appeal absent evidence of an *514 abuse of discretion” (citing Todd v. United Steelworkers of America, 441 So.2d 889, 892 (Ala.1983)))); Henderson v. Alabama Power Co., 627 So.2d 878, 910 (Ala.1993), abrogated by Ex parte Apicella, 809 So.2d 865 (Ala.2001) (Houston, J., dissenting) (observing that even before the ratification of the Alabama Constitution of 1901, “in cases involving egregious conduct, discretionary awards of punitive damages by juries were subject to post-judgment review by the courts under an abuse of discretion standard”). See also Jenelle Mims Marsh, Alabama Law of Damages § 7:6 (6th ed.) (noting the application of a de novo standard to challenges to the federal constitutionality of a punitive-damages award under the three guideposts set by Gore, but the application of an abuse-of-discretion standard to challenges to the appropriateness of a punitive-damages award under state law). We are not asked in this case, however, to revisit this Court’s decisions in Brown and Horton Homes, and, in any event, any concern as to this issue has no bearing on my reason for dissenting in this case.