WINDOM, Presiding Judge.
Eugene Milton Clemons II appeals the circuit court’s summary dismissal of his successive postconviction petition filed pursuant to Rule 32, Ala. R.Crim. P., in which he challenged his 1994 conviction for murder made capital because it was committed during the course of a robbery, see § 13A-5-40(a)(2), Aa.Code 1975, and his sentence of death. On December 20, 1996, this Court affirmed Clemons’s conviction and sentence of death. On January 16, 1998, the Alabama Supreme Court also affirmed Clemons’s conviction and sentence. Thereafter, on September 10, 1998, this Court issued the certificate of judgment.
“In December 1999 or January 2000, [Clemons] filed [his first] Rule 32 petition, challenging his conviction and sentence.” Clemons v. State, 55 So.3d 314, 318 (Ala.Crim.App.2003) (footnote omitted). Later, Clemons filed several amendments to his petition. The circuit court summarily dismissed some of Clemons’s claims and held a hearing on the remainder of his claims. Eventually, the circuit court denied relief on all of Clemons’s claims.
“Clemons appealed the denial of his Rule 32 petition to [this Court].” Ex parte Clemons, 55 So.3d 348, 350 (Ala.2007). “While Clemons’s appeal was pending [before this Court], the United States Supreme Court [issued its decision in] Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), holding unconstitutional the execution of mentally retarded defendants.” Id. After the Supreme Court of the United States issued its opinion in Atkins, this Court remanded Clemons’s cause to the circuit court with instructions for that court to “conduct an evidentiary hearing on and [to] make specific, written findings of fact as to [Clemons’s] contentions that he is mentally retarded, that his trial attorneys rendered ineffective assistance by not developing and presenting evidence concerning his limited mental capacity, and that his sentence is unauthorized as a matter of law.” Clemons, 55 So.3d at 322. “After an extensive evidentiary hearing, the [circuit] court ... determined that Clemons falls ‘in the borderline range of intellectual functioning [but] ... is not mentally retarded.’ ” Ex parte Clemons, 55 So.3d at 350.
On return to remand, this Court affirmed the circuit court’s judgment. In doing so, this Court affirmed the circuit court’s determination that Clemons is not mentally retarded. This Court also sua sponte held that Clemons’s ineffective-assistance-of-counsel claims were procedural *3 ly barred pursuant to Rule 32.2(a), Ala. R.Crim. P., because they could have been but were not raised at trial and on appeal. Clemons, 55 So.3d at 332-33.
On May 4, 2007, the Alabama Supreme Court issued an opinion reversing the portion of this Court’s judgment that sua sponte raised the procedural bars contained in Rule 32.2, Ala. R.Crim. P. Ex parte Clemons, 55 So.3d 348 (Ala.2007). In reversing this Court’s judgment, the Alabama Supreme Court held that the procedural bars contained in Rule 32.2, Ala. R.Crim. P., are affirmative defenses that can be waived if the State does not assert them in the circuit court. Id. at 351-56. It further held that once waived, those affirmative defenses cannot be asserted sua sponte by an appellate court except in “extraordinary circumstances.” Id. at 354. The Court then determined that Clemons’s cause did not involve “extraordinary circumstances” that would justify this Court’s sua sponte application of the procedural bars and remanded the cause to this Court “for consideration of Clemons’s claims of ineffective assistance of trial counsel.” Ex parte Clemons, 55 So.3d at 356. The Alabama Supreme Court also quashed the writ of certiorari it had issued regarding Clemons’s claim that the trial court improperly failed to consider his low intelligence quotient (“IQ”) as mitigation because that claim was not raised in his Rule 32 petition.
On November 2, 2007, this Court, in an unpublished memorandum, affirmed the circuit court’s rejection of Clemons’s inef-feetive-assistance-of-counsel claims. On August 13, 2010, the Alabama Supreme Court denied Clemons’s petition for writ of certiorari, and this Court issued its certificate of judgment.
On August 16, 2010, Clemons filed a successive Rule 32 petition. (C. 12.) In this petition, Clemons alleged that his “jury did not hear and was therefore unable to consider and give effect to his mitigating evidence of low intelligence and mental retardation”; therefore, he is entitled to relief under the Supreme Court of the United States’ decisions in Tennard v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004), and Smith v. Texas, 543 U.S. 37, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004). (C. 20.) According to Clemons, “[ujnder Tennard, [his] low IQ was a relevant mitigating factor that the jury should have, but did not, consider during the sentencing phase of his trial.” (C. 22.) Clemons further asserted that the claim raised in his current Rule 32 petition was based on new law established in Tennard, 542 U.S. at 274, and Smith, 543 U.S. at 37, after Clemons’s initial Rule 32 petition had been denied and that denial appealed. Clemons argued that because Tennard and Smith were not decided until after his initial Rule 32 petition had been denied and appealed, his current petition was the first instance in which he could raise his claim; therefore, his petition is not barred under Rule 32.2(b), Ala. R.Crim. P., as successive. He further argued that because this was the first instance in which he could raise his Tennard and Smith claim, his petition was not time-barred pursuant to Rule 32.2(c), Ala. R.Crim. P. Alternatively, he asserted that equitable tolling should excuse his failure to timely raise his claim because it was based on new law established in Tennard and Smith.
On September 15, 2010, the State of Alabama answered Clemons’s Rule 32 petition and moved the circuit court to summarily dismiss his claim. In its motion to dismiss, the State asserted that Clemons’s claim was procedurally barred under Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., because it could have been, but was not, raised at trial or on appeal. The State *4 also asserted that Clemons’s claim was successive and untimely; therefore, it was procedurally barred under Rules 32.2(b) and (c), Ala. R.Crim. P. Finally, the State asserted that Clemons’s claim is without merit.
In response to Clemons’s assertion that his claim was not successive or untimely because it was based on new law created in Tennard and Smith, the State asserted that these cases did not create new law. According to the State, Tennard and Smith merely applied well established law — that the jury may not be precluded from considering any relevant mitigation— to a new set of facts. The State then argued that because the proposition of law relied upon in Tennard and Smith had been established before Clemons’s trial began and before his previous Rule 32 proceedings began, Clemons’s argument that these two cases excuse the procedural bars contained in Rule 32.2, Ala. R.Crim. P., is without merit.
On December 6, 2010, Clemons filed a reply to the State’s answer and motion to dismiss. In his response, Clemons asserted that his claim was not procedurally barred under any of the provisions of Rule 32.2, Ala. R.Crim. P., and was “plainly meritorious because new Supreme Court precedent establishes that his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when the jury was not granted an opportunity to hear, and therefore to consider mitigating evidence of his low intelligence .... ” (C. 81-82.) Clemons further argued that the Alabama Supreme Court invited him to raise his claim in a successive Rule 32 petition. To support this assertion, Clemons cited the following portion of the Alabama Supreme Court’s decision on appeal from the denial of his first Rule 32 petition:
“We cannot, however, consider the issue whether the - trial court erred in failing to consider Clemons’s borderline intellectual capacity as a mitigating factor in the sentencing phase of his trial because the issue was not presented to the trial court in Clemons’s Rule 32 petition. See Ex parte Linnell, 484 So.2d 455, 457 (Ala.1986) (‘[T]he rule against raising an issue for the first time at the appellate level applies even if the issue raised would present constitutional questions.’). As to the claims based on Tennard [v. Dretke, 542 U.S. 274 (2004),] and Smith [v. Texas, 543 U.S. 37 (2004),] Clemons could not have raised such claims under Tennard before the trial court or the Court of Criminal Appeals, because that line of cases had not yet been decided when Clemons’s case was pending in those courts. We are not at liberty to consider claims in a Rule 32 petition that are raised for the first time on appeal. Ex paHe Linnell, supra.
“Whether Clemons may raise any of these issues in a successive Rule 32 petition is not before us. See Rule 32.2(b)(2)[, Ala. R.Crim. P.,] (‘A successive petition on different grounds shall be denied unless ... the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.’). We therefore quash the writ as improvidently granted as to this issue.”
Ex parte Clemons, 55 So.3d at 351. According to Clemons, this portion of the Alabama Supreme Court’s opinion established that his current claim is based on new law and, thus, could not have been raised previously. He also argued that the Alabama Supreme Court’s decision established the law of the case; therefore, the *5 circuit court could not hold that the claim could have been raised previously. Clemons also argued that the time limitation contained in Rule 32.2(c), Ala. R.Crim. P., does not apply to a successive Rule 32 petition. He further asserted that “[s]ince [the] jury did not have the opportunity to weigh mitigating evidence of his mental retardation and low IQ, ... the death penalty constitutes an unconstitutional sentence.” (C. 89.)
On January 18, 2011, the circuit court issued an order summarily dismissing Clemons’s successive Rule 32 petition. In its order the circuit court found that Clemons’s claim was procedurally barred under the following: 1) Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., because the claim could have been but was not raised at trial and on appeal; 2) Rule 32.2(b), Ala. R.Crim. P., because the claim was successive; and 3) Rule 32.2(c), Ala. R.Crim. P., because the petition was filed after the applicable time period for filing such a petition had expired.
In his brief on appeal, Clemons provides numerous reasons why he believes that the circuit court improperly dismissed his petition.[1] This Court disagrees.
I.
Initially, “[w]hen reviewing a circuit court’s denial of a Rule 32 petition, this Court applies an abuse-of-discretion standard.” Shouldis v. State, 38 So.3d 753, 761 (Ala.Crim.App.2008) (quoting Whitman v. State, 903 So.2d 152, 154 (Ala.Crim.App.2004), citing in turn McGahee v. State, 885 So.2d 191 (Ala.Crim.App.2003)). However, “when the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala.2001) (citing State v. Hill, 690 So.2d 1201, 1203 (Ala.1996)). Further, “[t]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence.” Burgess v. State, 962 So.2d 272, 277 (Ala.Crim.App.2005) (internal citations and quotations omitted). Finally, “[t]he procedural bars of Rule 32[.2, Ala. R.Crim. P.,] apply with equal force to all cases, including those in which the death penalty has been imposed.” Id. (internal citations and quotations omitted).
Further, “plain-error review does not apply to appeals from rulings on Rule 32, Ala. R.Crim. P., postconviction petitions.” Ex parte Dobyne, 805 So.2d 763, 776 (Ala.2001). Thus, “the rules of preservation apply in Rule 32 proceedings, even if the death penalty is involved.” Miller v. State, 99 So.3d 349, 402 n. 10 (Ala.Crim.App.2011).
II.
The dispositive issue before this Court is whether the circuit court correctly deter *6 mined that Clemons’s claim was procedurally barred pursuant to Rules 32.2(a)(3); 32.2(a)(5); 32.2(b); and 32.2(c), Ala. R.Crim. P. This Court holds that it did.
A.
First, this Court must address Clemons’s argument that in Ex parte Clemons, 55 So.3d at 351, the Alabama Supreme Court established the law of the case by holding “[a]s to the claims based on Ten-nard and Smith, Clemons could not have raised such claims under Tennard before the trial court or the Court of Criminal Appeals, because that line of cases had not yet been decided when Clemons’s case was pending in those courts,” thus, binding the circuit court and this Court to hold that his claim was based on new law and could not have been raised earlier. If the Alabama Supreme Court established the law of the case, it is questionable whether the circuit court correctly applied the procedural bars contained in Rule 32.2, Ala. R.Crim. P.
“[Ujnder the ‘law of the case’ doctrine, whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” Walden v. ES Capital, LLC, 89 So.3d 90, 107 (Ala.2011) (internal citations and quotations omitted). “The law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same ease, thereby hastening an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided.” Id. (internal citations and quotations omitted).
However, the Alabama Supreme Court has explained that obiter dictum (commonly referred to as dictum or dicta) does not establish the law of the case. Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989). In other words, “because obiter dictum is, by definition, not essential to the judgment of the court which states the dictum, it is not the law of the case established by that judgment.” Ex parte Williams, 838 So.2d 1028, 1031 (Ala.2002) (citing Gray, 553 So.2d at 81); see also Ex parte Patton, 77 So.3d 591, 596 (Ala.2011) (“ ‘Black’s Law Dictionary 409 (8th ed.2004) defines obiter dictum as: “A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case(quoting Carr v. International Refining & Mfg. Co., 13 So.3d 947, 957 n. 3 (Ala.2009))). Accordingly, courts are not bound to apply obiter dictum under the law-of-the-case doctrine. Gray, 553 So.2d at 81; see also City of Birmingham v. Horn, 810 So.2d 667, 681, n. 1 (Ala.2001).
Here, the Alabama Supreme Court’s statement relating to Clemons’s ability to raise earlier his Tennard/Smith claim was not essential to its decision to quash certiorari review of that claim. Ex parte Clemons, 55 So.3d at 351. On the contrary, the Alabama Supreme Court quashed certiorari review “because the issue was not presented to the trial court in Clemons’s Rule 32 petition.” Id. Therefore, the Alabama Supreme Court’s statement that “the claims based on Tennard and Smith” could not have been raised before was obiter dictum and did not establish the law of the case.
Because the Alabama Supreme Court’s statement was obiter dictum and did not establish the law of the case, Clemons’s argument that the circuit court was, and this Court is, bound to hold that Tennard and Smith established new law and that his claim, which he based on those cases, could not have been raised before is without merit. Accordingly, this Court will *7 now address whether Clemons’s claim was based on new law and whether the circuit court correctly applied the procedural bars contained in Rule 82.2, Ala. R.Crim. P.
B.
Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., provide that “[a] petitioner will not be given relief under this rule based upon any ground, ... [w]hich could have been but was not raised at trial [or] ... on appeal-” Rule 32.2(b), Ala. R.Crim. P., provides, in pertinent part:
“If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule.... A successive petition on different grounds shall be denied unless ... the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.”
Further, under Rule 32.2(c), Ala. R.Crim. P., Clemons was required to file his petition within two years of this Court’s issuance of the certificate of judgment on direct appeal.[2]
There does not appear to be any dispute that absent some excuse, Clemons’s petition would be barred because his claim could have been but was not raised at trial, on appeal, or during his first Rule 32 proceedings. Rules 32.2(a)(3); 32.2(a)(5); 32.2(b), Ala. R.Crim. P. There also appears to be no dispute that absent some excuse, Clemons’s petition was untimely because it was filed well after the two-year time limitation contained in Rule 32.2(c), Ala. R.Crim. P., had expired. Rather, the gravamen of Clemons’s arguments on appeal (and the dispute with the State) concerns whether the circuit court erroneously determined that his claim — a claim asserting that the jury must be allowed to consider low IQ as mitigation— was procedurally barred because that claim was based on new law established by the Supreme Court of the United States in Tennard v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004), and Smith v. Texas, 543 U.S. 37, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004). Based on the premise that Tennard, 542 U.S. at 274, and Smith, 543 U.S. at 37, created new law, Clemons argues that his claim could not have been raised earlier, i.e., at trial, or on appeal, or in his first Rule 32 proceedings. From there, Clemons argues that his claim is not barred as successive, Rule 32.2(b), Ala. R.Crim. P., barred as untimely, Rule 32.2(c), Ala. R.Crim. P., or barred pursuant to Rules 32.2(a)(3) and (a)(5), for failure to raise it at trial or on appeal.
The fatal flaw in Clemons’s argument is that the Supreme Court of the United States did not establish new law in Ten-nard and Smith; instead, it applied well established law to new sets of facts. Again, Clemons alleges that the Supreme Court in Tennard and Smith established that juries must be allowed to consider low IQ as mitigation in a capital-sentencing proceeding and that his claim for relief is *8 based on that new law. However, in 1978, the Supreme Court issued a plurality opinion holding “that [in capital cases] the Eighth and Fourteenth Amendments require that the sentencer ‘not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.’ ” Penry v. Lynaugh (“Penry I”), 492 U.S. 302, 317, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on other grounds, Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (quoting Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)) (emphasis omitted). Four years later, “in Eddings v. Oklahoma, 455 U.S. 104 (1982), a majority of the Court reaffirmed that a sentencer may not be precluded from considering, and may not refuse to consider, any relevant mitigating evidence offered by the defendant as the basis for a sentence less than death,” including evidence of the defendant’s mental-health problems. Penry I, 492 U.S. at 318; Eddings, 455 U.S. at 107.
After “it [became] clear from Lockett and Eddings that a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant’s background or character or to the circumstances of the offense that mitigate against imposing the death penalty,” Penry I, 492 U.S. at 318, the State of Texas retained a capital-sentencing scheme that required the jury to answer three questions in deciding whether the defendant is to be sentenced to life or death. Specifically, the jury could consider only:
‘“(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
‘“(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
“ ‘(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.’ Tex.Code Crim. Proc. Ann., Arts. 37.071(b) (Vernon 1981 and Supp. 1989).”
Penry I, 492 U.S. at 310. “If the jury unanimously answer[ed] ‘yes’ to each issue submitted, the trial court must sentence the defendant to death. Arts. 37.071(c)-(e).” Id. In answering those three sentencing questions, the jury could consider and give effect to mitigating evidence that related to or rebutted those questions. However, the jury could not consider and give effect to certain types of mitigating evidence such as mental retardation or an abusive childhood because that mitigation did not relate to the three sentencing questions. Id. at 318, 328.
Under this capital-sentencing scheme, Johnny Paul Penry was convicted of capital murder and was sentenced to death. Id. at 308-09. During sentencing, “Penry offered mitigating evidence of his mental retardation and abused childhood as the basis for a sentence of life imprisonment rather than death....” Id. at 320. At trial and during his state appeal, he argued that Texas’s capital-sentencing scheme, with its three sentencing questions and no instruction informing the jury of its duty to consider all his mitigating evidence, violated the Eighth Amendment’s prohibition of cruel and unusual punishment under the Supreme Court’s *9 holdings in Lockett and Eddings. After receiving no relief in the state courts, Pen-ry filed a federal habeas petition, again alleging that Texas’s capital-sentencing scheme, which failed to provide the jury with an adequate vehicle to consider his mitigating evidence, violated the Eighth Amendment. Id. The Supreme Court of the United States agreed.
In reviewing Texas’s scheme, the Supreme Court of the United States held that evidence of mental retardation and an abusive childhood was mitigating evidence. Id. at 328. It then applied Lockett and Eddings and held that Texas’s capital-sentencing scheme, which failed to provide the jury with an adequate vehicle to consider Penry’s mitigating evidence, violated the Eighth Amendment’s prohibition of cruel and unusual punishments. Id. at 328. Specifically, the Court held that restricting the jury’s consideration to Texas’s three sentencing questions and failing to instruct the jury that it had a duty to consider all of Penry’s mitigating evidence did not provide the jury with an opportunity “to consider and give effect to mitigating evidence relevant to [Penry’s] character or record or the circumstances of the offense,” in violation of the Eighth Amendment. Id. at 327-28. The Court explained that its “reasoning in Lockett and Eddings thus compels a remand for resentencing so that [the Court does] not risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty.” Id. (citations and quotations omitted). In holding that the jury must be allowed to consider evidence of Penry’s mental health and abusive childhood in deciding his sentence, the Court specifically noted that it was not creating a “new rule” of law. Id. at 315.
“Penry was retried in 1990 and again found guilty of capital murder [and sentenced to death]. During the penalty phase, the defense again put on extensive evidence regarding Penry’s mental impairments and childhood abuse.” Penry v. Johnson (“Penry II”), 532 U.S. 782, 788, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). “When it came time to submit the case to the jury, the court instructed the jury to determine Penry’s sentence by answering three special issues — the same three issues that had been put before the jury in Penry I.” Id. at 788-89. The jury was also instructed that if it answered all the questions with a “yes,” then Penry would be sentenced to death, and if it answered any question “no,” he would be sentenced to life in prison. Id. at 789. This time, however, the jury was also instructed to consider all of Penry’s mitigating evidence. Id.
On appeal, Penry raised the same argument he raised in Penry I. The Supreme Court of the United States held that the jury instruction requiring the jury to consider Penry’s mitigation did not sufficiently connect that mitigation to the three sentencing questions that determined the sentence; therefore, “ ‘[a] reasonable juror could well have believed that there was no vehicle for expressing the view that Penry did not deserve to be sentenced to death based upon his mitigating evidence’” of mental retardation and an abusive childhood. Id. at 804 (quoting Penry I, 492 U.S. at 326. Accordingly, the Court again reversed Penry’s death sentence.
In Tennard v. Dretke, 542 U.S. 274, 281, 288-89, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004), the case Clemons alleges created new law, the Supreme Court again reviewed Texas’s capital-sentencing scheme to determine whether it adequately provided an avenue for the jury to consider and to give effect to mitigating evidence relating to a defendant’s mental health. Specif- *10 ieally, the Court reviewed whether the United States Court of Appeals for the Fifth Circuit correctly applied the standard for the issuance of a certificate of appealability (“COA”) when it denied Ten-nard’s petition for a COA relating to his “Penry [I ] claim” that the jury had been precluded from considering his low IQ when it sentenced him to death.[3] Id. at 279.
After Penry I and Penry II were decided, Texas revised its sentencing scheme and, under the new scheme, Tennard’s jury was instructed to answer two sentencing questions. Id. at 278-79. Neither of the two sentencing questions allowed the jury to consider and to give effect to Ten-nard’s mitigating evidence indicating that he had a low IQ. Id. at 288-89. The Fifth Circuit Court of Appeals held that the failure to provide the jury with a vehicle to consider Tennard’s mitigation was not error because Tennard’s mitigating evidence was not “constitutionally relevant mitigating evidence, that is, evidence of a uniquely severe permanent handicap with which the defendant was burdened through no fault of his own, and evidence that the criminal act was attributable to this severe permanent condition.” Id. at 281 (citations and quotations omitted). Therefore, it denied his petition for a COA. Id.
Reviewing the Fifth Circuit’s decision, the Supreme Court held that the Fifth Circuit erroneously created a “constitutional relevance” standard for the admission of mitigation. Id. at 284. The Court then explained that “[rjelevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value”, [i.e.,] evidence ... of such a character that it might serve as a basis for a sentence less than death.” Id. at 284-85, 287 (internal citations and quotations omitted).
Having determined that the Fifth Circuit applied the wrong standard when it reviewed Tennard’s Penry I claim, the Court then looked to the likelihood Ten-nard would succeed on that claim. Id. at 288. The Court held that reasonable jurists could find that the federal district court had wrongly denied Tennard’s Penry I claim because the jury was not provided an opportunity to consider Tennard’s IQ as mitigating evidence; therefore, the Fifth Circuit had erroneously denied Tennard’s request for a COA from the denial of Tennard’s petition for writ of habeas corpus.[4] Id. at 289.
*11 Shortly after Tennard, the Supreme Court issued its opinion in Smith v. Texas, 543 U.S. 37, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004), the second case Clemons argues created new law. Smith was convicted and sentenced to death under the same capital-sentencing scheme as was Tennard. Id. at 43. Like Tennard, Smith presented evidence indicating, among other things, that he had a low IQ. Id. at 41. Also like Tennard’s jury, Smith’s jury was “instruct[ed] ... to give effect to [his] mitigation evidence, but [only to the extent that mitigation would negate] what would otherwise be affirmative responses to two special issues relating to deliberateness and future dangerousness.” Id. at 38.
In the Texas courts, Smith argued that the sentencing scheme and jury instructions under which he was sentenced to death violated the Eighth Amendment under the Supreme Court’s holdings in Pen-ry I and Penry II. Id. at 42 — 43. The Texas courts rejected Smith’s Penry claim, applying the same “constitutional relevance” test that the Supreme Court condemned in Tennard,[5] The Supreme Court again condemned the “constitutional relevance” tests and held that Smith’s “evidence [of his low IQ] was relevant for mitigation purposes ... under [its] precedents, even those predating Tennard. See, e.g., Penry I, 492 U.S., at 319-322; Payne v. Tennessee, 501 U.S. 808, 822 (1991); Boyde v. California, 494 U.S. 370, 377-378 (1990); Eddings v. Oklahoma, 455 U.S. 104 (1982).” Smith, 543 U.S. at 45. The Court then held that like Penry I, Penry II, and Tennard, the scheme under which Smith was sentenced to death “did not provide the jury with an adequate vehicle for expressing a ‘reasoned moral response’ to all of the evidence relevant to the defendant’s culpability.” Smith, 543 U.S. at 46 (quoting Penry II, 532 U.S. at 796 (emphasis in original)). Accordingly, the Supreme Court reversed Smith’s sentence of death.
Against this backdrop, Clemons argues that Tennard and Smith created new law and that he could not have raised his Ten-nard/Smith claim earlier because that line of cases had not been established. Clemons’s argument, however, misplaces the beginning of the line of cases. The line did not, as Clemons asserts, begin with Tennard and Smith. Instead, the line began in 1978 when the Supreme Court issued Lockett v. Ohio, holding that the sentencer in a capital case may “not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” 438 U.S. at 604 (emphasis in original). That line continued through Eddings, 455 U.S. at 122, Penry I, Penry II, and most recently Tennard and Smith. Accordingly, Clemons has not identified a new line of cases or new law; instead, he has identified the latest two eases in a long line of cases applying well established law.
*12 Because the Supreme Court did not establish new law in Tennard and Smith but rather applied law that was established long before Clemons’s trial and before his first Rule 32 petition, Clemons’s claim was procedurally barred because he could have raised it at trial, on appeal, Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., or in his first Rule 32 proceedings, 32.2(b), Ala. R.Crim. P. Further, “[b]ecause the ... Supreme Court did not establish a new law or a new ground for ... relief in [Tennard or Smith, Clemons’s] assertion that the release of [those cases] exempted his ... claim from the application of the time limitation contained in Rule 32.2(c), Ala. R.Crim. P., [or] entitled [him] to equitable tolling [is without merit].” Jenkins v. State, 105 So.3d 1234, 1242 (Ala.Crim.App.2011). See also Fitts v. Eberlin, 626 F.Supp.2d 724, 733 (N.D.Ohio 2009) (“Given that no new rule exists that applies to [the petitioner’s] case, [his] plea for equitable tolling ... must fail.”). Thus, the circuit court correctly determined that Clemons’s claim was untimely under Rule 32.2(c), Ala. R.Crim. P.
For the foregoing reasons, the circuit court did not err by summarily dismissing Clemons’s claim because it was procedurally barred.[6] See Rule 32.7(d), Ala. R.Crim. P. (authorizing a circuit court to summarily dismiss a claim that is procedurally barred).
III.
Clemons also argues that he is entitled to relief under the Supreme Court of the United States’ decision in Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Clemons’s claim that he is entitled to relief under Rompilla is not properly before this Court because it was not raised in Clemons’s Rule 32 petition. See Ex parte Clemons, 55 So.3d at 351 (holding that appellate courts may not, on appeal from the dismissal of a Rule 32 petition, consider claims not raise in the Rule 32 petition); Ex parte Linnell, 484 So.2d 455, 457 (Ala.1986) (“[T]he rule against raising an issue for the first time at the appellate level applies even if the issue raised would present constitutional questions.”).
In Rompilla, the Supreme Court addressed a claim of ineffective assistance of counsel during the penalty phase of a capital-murder trial. Id. at 377. Clemons, however, did not raise any ineffective-assistance-of-counsel claims in his Rule 32 petition. Further, the only reference to Rompilla in Clemons’s Rule 32 petition appears in the following cryptic footnote:
“Another highly relevant U.S. Supreme Court decision, Rompilla v. Beard, 545 U.S. 374 (2005), also was issued while Mr. Clemons’ first Rule 32 petition was already on appeal, and the appellate courts did not address it despite Mr. Clemons’ diligent attempts to highlight the decision. See, e.g., June 23, 2005 Letter from A. Stakes to Clerk of Court of Criminal Appeals. Like Tennard, Rompilla should also be considered now by this Court as intervening precedent that the appellate courts may not have previously considered in light of Ex parte Linnell.”
(C. 21.) This footnote, which appears to simply complain that the appellate courts failed to consider Rompilla, did not actually assert a claim under Rompilla. At most, this footnote urges the circuit court *13 to consider Rompilla new law; however, it did not raise any claim under which considering Rompilla new law would be relevant. In other words, this footnote was insufficient to assert a claim of ineffective assistance of counsel and thus failed to assert a claim to which Rompilla would apply.[7]
Because Clemons did not raise any claims of ineffective assistance of counsel in his Rule 32 petition, his argument that he is entitled to relief under Rompilla — an ineffective-assistance-of-counsel case — is not properly before this Court. Therefore, this argument does not entitle Clemons to any relief.
For the foregoing reasons, the circuit court’s judgment is affirmed.
AFFIRMED.
WELCH, KELLUM, and BURKE, JJ., concur. JOINER, J., recuses himself.

. During oral argument, counsel for Clemons asserted for the first time that the circuit court erroneously failed to consider evidence of Clemons’s IQ when sentencing him to death. Counsel stated that the Supreme Court of the United States' holdings in Tennard and Smith require the circuit court to investigate and find as mitigating any evidence indicating that a capital defendant has a low IQ. Clemons did not raise this claim in the circuit court. In his Rule 32 petition, he asserted only that the "jury did not hear and was therefore unable to consider and give effect to his mitigating evidence of low intelligence and mental retardation." (C. 20.) Because Clemons’s allegation that the circuit court was required to find and consider mitigating evidence relating to his IQ was not raised in his Rule 32 petition, that claim is not properly before this Court. See Ex parte Clemons, 55 So.3d at 351 (holding that appellate courts may not, on appeal from the dismissal of a Rule 32 petition, consider claims not raised in the Rule 32 petition); Ex parte Linnell, 484 So.2d 455, 457 (Ala.1986) (”[T]he rule against raising an issue for the first time at the appellate level applies even if the issue raised would present constitutional questions.”).

. "Rule 32.2(c), Ala. R.Crim. P., was amended effective August 1, 2002, to reduce the limitations period from two years to one year; however, for those cases that became final before August 1, 2001, the two-year limitations period applies. See Hyde v. State, 950 So.2d 344 (Ala.Crim.App.2006).” Bryant v. State, 29 So.3d 928, 933 n. 2 (Ala.Crim.App.2009). Clemons’s conviction became final on September 10, 1998; therefore, the two-year limitations period applies to his Rule 32 petition.

. "In order to appeal [a federal district court's] denial of a federal writ of habeas corpus under 28 U.S.C. § 2254, a petitioner seeking relief from a state-court conviction must obtain a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A)." Finkelstein v. Spitzer, 455 F.3d 131, 133 (2d Cir.2006). The standard for the issuance of a COA is irrelevant to this opinion and will not be discussed.

. This Court notes that when a state court adjudicates the merits of a prisoner’s claim challenging his conviction or sentence, federal courts are prohibited from creating new law applicable to the State when reviewing that claim during habeas proceedings. See 28 U.S.C. § 2254(d)(l)-(d)(2) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (emphasis added)); cf. Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 *11 L.Ed.2d 334 (1989). Tennard’s claim was rejected on the merits by the Texas courts; therefore, under 28 U.S.C. § 2254(d), the Supreme Court could not create new law in reviewing his claim. Tennard, 542 U.S. at 279-80. Instead, the Court was restricted to applying "clearly established” law, i.e., Penry I, Lockett, and Eddings, to Tennard’s claim.

. The Texas courts rejected Smith’s claim before the Supreme Court issued its opinion in Tennard. Smith, 543 U.S. at 43.

. Because Clemons's claim is procedurally barred, this Court will not address the merits of the claim. This Court notes, however, that Clemons did not present the jury with evidence of his low IQ as mitigation. Accordingly, it is hard to imagine how the State or the circuit court prevented the jury from considering that evidence.

. This Court notes that Supreme Court of the United States did not create new law in Rom-pilla. Instead, it applied law established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to a new set of facts. See Newland v. Hall, 527 F.3d 1162, 1197 (11th Cir.2008) (holding that Rompilla is "not new law”).